# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Archdiocese of Milwaukee,

        Debtor.

Bankruptcy Case No. 11-20059-svk

Chapter 11

---

**ARCHDIOCESE OF MILWAUKEE**

        Plaintiff,

and

**DONALD MARSHALL** and
**DEAN WEISSMULLER**

        Additional Plaintiffs,

vs.

**STONEWALL INSURANCE COMPANY; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON;
ACCIDENT & CASUALTY INSURANCE COMP
ANY; ACCIDENT & CASUALTY COMPANY;
ACCIDENT & CASUALTY INSURANCE COMPANY
(NO.2 ACCOUNT); ACCIDENT & CASUALTY
INSURANCE COMPANY (NO.3 ACCOUNT);
ACCIDENT & CASUALTY INS. CO. OF
WINTERTHUR; ACCIDENT & CASUALTY INS.
CO. OF WINTERTHUR (NO.2 ACCOUNT);
ACCIDENT & CASUALTY INS. CO. OF
WINTERTHUR (NO.3 ACCOUNT); ALBA
GENERAL INSURANCE COMPANY LIMITED;
ANDREW WEIR INSURANCE COMPANY
LIMITED; ARGONAUT NORTHWEST INSURANCE
COMPANY LIMITED; ARGONAUT NORTHWEST
INSURANCE COMPANY; BELLEFONTE
INSURANCE COMPANY; BERMUDA FIRE &
MARINE INSURANCE COMPANY LTD.;**

Adversary Proceeding
No. 12-02835-svk
**Jury Trial Requested**

Catalina J. Sugayan
Marcos G. Cancio
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530
Email: catalina.sugayan@sedgwicklaw.com
      marcos.cancio@sedgwicklaw.com

Russell W. Roten
Jeff D. Kahane
DUANE MORRIS LLP
865 S. Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: 213-689-7400
Facsimile: 213-689-7401
Email: JKahane@duanemorris.com

BERMUDA FIRE & MARINE INSURANCE
COMPANY; BISHOPSGATE INSURANCE
COMPANY LTD.; BISHOPSGATE INS. COMPANY;
DELTA LLOYD NON LIFE; DELTA LLOYD NON
LIFE LTD.; DOMINION INSURANCE COMPANY
LIMITED; DOMINION INSURANCE COMPANY;
EDINBURGH ASSURANCE COMP ANY LIMITED,
NO.2 A/C.; ENGLISH AND AMERICAN
INSURANCE COMPANY LIMITED; ENGLISH AND
AMERICAN INSURANCE COMPANY LIMITED
"M" ACCOUNT; EXCESS INSURANCE COMPANY
LIMITED; EXCESS INSURANCE COMPANY;
GENERAL INSURANCE COMPANY OF TRIESTE &
VENICE; HELVETIA ACCIDENT INSURANCE
COMPANY; HELVETIA ACCIDENT GIBBON N.M.
GROUP; HELVETIA ACCIDENT SWISS INS. CO.
GIBBON NM GROUP;  LONDON AND OVERSEAS
INSURANCE COMPANY LIMITED; LONDON &
EDINBURGH GENERAL INS. CO. LTD; LONDON &
EDINBURGH GENERAL INS. CO.; LONDON &
EDINBURGH GENERAL LTD.; L.T.B. HIGHLANDS
INSURANCE COMPANY; MINSTER INSURANCE
COMPANY LIMITED; NATIONAL CASUALTY
CO.; NATIONAL CASUALTY CO. OF AMERICA
LTD.; NATIONAL CASUALTY CO. OF AMERICA;
NED LLOYD NON LIFE; NEW LONDON
REINSURANCE CO., LTD.; NORTH ATLANTIC
INSURANCE CO.; ORION INSURANCE COMPANY
LIMITED; ORION INSURANCE COMPANY "T"
ACCT.; RIVER THAMES INSURANCE COMPANY
LIMITED; STRONGHOLD INSURANCE
COMPANY; STRONGHOLD INSURANCE
COMPANY LIMITED; SOUTHERN AMERICAN
INS. CO.; SWISS UNION INSURANCE COMPANY
LIMITED; TUREGUM INSURANCE COMPANY
LIMITED; TUREGUM INSURANCE CO.;
WALBROOK INSURANCE COMPANY LTD.; and
WORLD AUXILIARY INSURANCE COMPANY
LIMITED

       Defendants.

_____

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON; AGEAS INSURANCE LIMITED (F/K/A
BISHOPSGATE INSURANCE COMPANY LTD.);

2

**ALLIANZ SUISSE VERSICHERUNGS-
GESELLSCHAFT AG (F/K/A HELVETIA
ACCIDENT INSURANCE COMPANY/HELVETIA
ACCIDENT GIBBON N.M. GROUP/HELVETIA
ACCIDENT SWISS INS. CO.); ASSICURAZIONI
GENERALI S.P.A (F/K/A GENERAL INSURANCE
COMPANY OF TRIESTE AND VENICE); DELTA
LLOYD SCHADEVERZEKERING  NV (F/K/A
DELTA LLOYD NON LIFE LTD.); DOMINION
INSURANCE COMPANY LTD.; EXCESS
INSURANCE COMPANY LIMITED; HARPER
INSURANCE LIMITED (F/K/A TUREGUM
INSURANCE COMPANY LTD.); HELVETIA SWISS
INSURANCE COMPANY (F/K/A ALBA GENERAL
INSURANCE COMPANY LIMITED); LONDON &
EDINBURGH INSURANCE COMPANY LIMITED;
NATIONAL CASUALTY CO.; NATIONAL
CASUALTY CO. OF AMERICA; NATIONAL
CASUALTY CO OF AMERICA LTD.;  NRG
VICTORY REINSURANCE LIMITED (F/K/A NEW
LONDON REINSURANCE LTD.); OCEAN MARINE
INSURANCE COMPANY LIMITED  (AS
SUCCESSOR-IN-INTEREST TO EDINBURGH
ASSURANCE COMPANY LIMITED NO. 2 A/C/);
OCEAN MARINE INSURANCE COMPANY
LIMITED (AS SUCCESSOR-IN-INTEREST TO
WORLD AUXILIARY INSURANCE COMPANY
LIMITED);RIVER THAMES INSURANCE
COMPANY LIMITED; SELECT MARKET
INSURANCE COMPANY (F/K/A ARGONAUT
NORTHWEST INSURANCE COMPANY);
STRONGHOLD INSURANCE COMPANY LIMITED;
AND WINTERTHUR SWISS INSURANCE
COMPANY (F/K/A ACCIDENT & CASUALTY
INSURANCE COMPANY/ACCIDENT & CASUALTY
COMPANY/ACCIDENT & CASUALTY NO. 2
ACCOUNT/ACCIDENT & CASUALTY NO. 3
CCOUNT/ACCIDENT & CASUALTY INS. CO. OF
WINTERTHUR/ACCIDENT & CASUALTY INS. CO.
OF WINTERTHUR NO. 2 ACCOUNT/ ACCIDENT &
CASUALTY INS. CO. OF WINTERTHUR NO. 3
ACCOUNT)**

Counter-Plaintiffs,

vs.

**ARCHDIOCESE OF MILWAUKEE**
                    Counter-Defendant.

---

### LONDON MARKET INSURERS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO THE ARCHDIOCESE'S COMPLAINT FOR DECLARATORY RELIEF

---

NOW COME Defendants and Counter-Plaintiffs, Certain Underwriters at Lloyd's, London, Ageas Insurance Limited (f/k/a Bishopsgate Insurance Company Ltd.), Allianz Suisse Versicherungs-Gesellschaft AG (f/k/a Helvetia Accident Insurance Company, Helvetia Accident Gibbon N.M. Group, and Helvetia Accident Swiss Ins. Co.), Assicurazioni Generali S.p.A (f/k/a General Insurance Company of Trieste and Venice), Delta Lloyd Schadeverzekering NV (f/k/a Delta Lloyd Non Life Ltd.), Dominion Insurance Company Ltd., Excess Insurance Company Limited, Harper Insurance Limited (f/k/a Turegum Insurance Company Ltd.), Helvetia Swiss Insurance Company (f/k/a Alba General Insurance Company Limited), London & Edinburgh Insurance Company Limited (f/k/a London & Edinburgh General Ins. Co. Ltd., London & Edinburgh General Ins. Co., and London & Edinburgh General Ltd.), National Casualty Co., National Casualty Co. of America, National Casualty Co of America Ltd., NRG Victory Reinsurance Limited (f/k/a New London Reinsurance Ltd.), Ocean Marine Insurance Company Limited (as successor-in-interest to Edinburgh Assurance Company Limited No. 2 A/C), Ocean Marine Insurance Company Limited (as successor-in-interest to World Auxiliary Insurance Corporation Limited), River Thames Insurance Company Limited, Select Markets Insurance Company (f/k/a Argonaut Northwest Insurance Company), Stronghold Insurance Company Limited, and Winterthur Swiss Insurance Company (f/k/a Accident & Casualty Insurance

4

Company, Accident & Casualty Company, Accident & Casualty No. 2 Account, Accident & Casualty No. 3 Account, Accident & Casualty Ins. Co. of Winterthur, Accident & Casualty Ins. Co. of Winterthur No. 2 Account, and Accident & Casualty Ins. Co. of Winterthur No. 3 Account), (all answering Defendants herein collectively "London Market Insurers" or "LMI"), who subscribed severally and not jointly as their interests appear to one or more of Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413, by and through their attorneys, Sedgwick LLP and Duane Morris LLP, and for their Answer to the Declaratory Judgment Complaint filed by or on behalf of the Plaintiff Archdiocese of Milwaukee ("Archdiocese") and Additional Plaintiffs Donald Marshall and Dean Weissmuller (Plaintiff and Additional Plaintiffs collectively "Plaintiffs"), state as follows:

## INTRODUCTION

LMI deny any and all allegations in the "Introduction" Section found on pages 8 through 11 of the Archdiocese's Complaint for Declaratory Relief and request that the entire Introduction Section be stricken. That Section does not comply with Fed. R. Civ. P. 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(d) which requires "each allegation must be simple, concise and direct," and Fed. R. Cov. P. 10 (b) which requires "a party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." LMI also deny Plaintiffs' characterizations of the Tort Claimants' claims and of the policies as any pleadings, proofs of claim and policies are written documents and speak for themselves. In addition, to the extent any allegations in the Introduction Section assert argument or legal conclusions, no response is

required. Moreover, since the entire Introduction Section constitutes argument or legal conclusions, it should be stricken as improper under the Fed. R. Civ. P. 8 and 10.

**JURISDICTION AND VENUE**

1.     LMI admit that this matter is a non-core, related to proceeding pursuant to 28 U.S.C. §157(a).  LMI also admit that venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. To the extent that the remaining allegations in paragraph 1 assert legal conclusions, no response is required.  LMI deny any remaining allegations in paragraph 1.

2.     LMI admit only that the Archdiocese consents to entry of a final order or judgment by this Court pursuant to Fed. R. Bankr. P. 7008(a).  However, LMI do not consent to the entry of a final order or judgment by this Court. LMI request trial by jury on all issues so triable.

**PARTIES**

3.     LMI admit that the Archdiocese is a religious corporation organized under the laws for the State of Wisconsin and is located in Wisconsin.  LMI also admit that they subscribed severally and not jointly to one or more Umbrella Liability Policies issued to the Archdiocese effective for the periods from July 1, 1967 to August 1, 1973.  To the extent that the remaining allegations in paragraph 3 assert legal conclusions, no response is required. LMI deny any remaining allegations in paragraph 3.

4.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 4 and therefore deny same.

5.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 5 and therefore deny same.

6

6.     To the extent the allegations in paragraph 6 assert legal conclusions, no response is required. To the extent the allegations recite Federal Rules or State Statutes, such Rules or Statutes are written and speak for themselves. LMI lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 6 and therefore deny same.

7.     LMI admit that they subscribed severally and not jointly to one or more Umbrella Liability Policies issued to the Archdiocese effective for the periods from July 1, 1967 to August 1, 1973. LMI further admit that the policies were issued as surplus lines policies. To the extent the allegations rely on the policies, they are written documents and speak for themselves. To the extent the allegations in paragraph 7 assert legal conclusions, no response is required. LMI deny any remaining allegations in paragraph 7.

a.     Defendant Accident & Casualty Insurance Company n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(a).

b.     Defendant Accident & Casualty Company n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(b).

c.     Defendant Accident & Casualty Insurance Company (No. 2 Account) n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer

to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(c).

d. Defendant Accident & Casualty Insurance Company (No. 3 Account) n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(d).

e. Defendant Accident & Casualty Ins. Co. of Winterthur n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(e).

f. Defendant Accident & Casualty Ins. Co. of Winterthur (No. 2 Account) n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(f).

g. Defendant Accident & Casualty Ins. Co. of Winterthur (No. 3 Account) n/k/a Winterthur Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(g).

8

h.        Defendant Alba General Insurance Company Limited n/k/a Helvetia Swiss Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(h).

i.        LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(i), and therefore deny same.

j.        Defendant Argonaut Northwest Insurance Company n/k/a Select Markets Insurance Company admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(j).

k.        LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(k), and therefore deny same.

l.        LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(l), and therefore deny same.

m.        LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(m), and therefore deny same.

n.        Defendant Bishopsgate Insurance Company Ltd. (improperly named as Bishopsgate Insurance Company) n/k/a Ageas Insurance Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(n).

9

o.       Defendant Bishopsgate Insurance Company Ltd. n/k/a Ageas Insurance Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(o).

p.       Defendant Delta Lloyd Non Life Ltd. (improperly named as Delta Lloyd Non Life) n/k/a Delta Lloyd Schadeverzekering NV admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(p).

q.       Defendant Delta Lloyd Non Life Ltd. n/k/a Delta Lloyd Schadeverzekering NV  admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(q).

r.       Defendant Dominion Insurance Company Ltd. admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(r).

s.       Defendant Dominion Insurance Company Ltd. (improperly named as Dominion Insurance Company) admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the

policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(s).

t.     Defendant Ocean Marine Insurance Company Limited as successor-in-interest to Edinburgh Assurance Company Limited, No. 2 A/C, admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(t).

u.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(u), and therefore deny same.

v.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(v), and therefore deny same.

w.     Defendant Excess Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(w).

x.     Defendant Excess Insurance Company Limited (improperly named as Excess Insurance Company) admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(x).

y.     Defendant General Insurance Company of Trieste and Venice n/k/a Assicurazioni Generali S.p.A admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the

policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(y).

z.　　Defendant Helvetia Accident Insurance Company n/k/a Allianz Suisse Versicherungs-Gesellschaft AG admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(z).

aa.　　Defendant Helvetia Accident Gibbon N.M. Group n/k/a Allianz Suisse Versicherungs-Gesellschaft AG admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(aa).

bb.　　Defendant Helvetia Accident Swiss Ins. Co. n/k/a Allianz Suisse Versicherungs-Gesellschaft AG admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(bb).

cc.　　LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(cc), and therefore deny same.

dd.　　Defendant London & Edinburgh General Ins. Co. Ltd. n/k/a London & Edinburgh Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to

the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(dd).

ee.   Defendant London & Edinburgh General Ins. Co. n/k/a London & Edinburgh Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(ee).

ff.   Defendant London & Edinburgh General Ltd. n/k/a London & Edinburgh Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(ff).

gg.   LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(gg), and therefore deny same.

hh.   LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(hh), and therefore deny same.

ii.   Defendant National Casualty Co. admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(ii).

jj.   Defendant National Casualty Co. of America Ltd. admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.

13

To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(jj).

kk.     Defendant National Casualty Co. of America admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(kk).

ll.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(ll), and therefore deny same.

mm.     Defendant New London Reinsurance Co. Ltd. n/k/a NRG Victory Reinsurance Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(mm).

nn.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(nn), and therefore deny same.

oo.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(oo), and therefore deny same.

pp.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(pp), and therefore deny same.

qq.     Defendant River Thames Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations recite to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(qq).

14

rr.     Defendant Stronghold Insurance Company Limited (improperly named as Stronghold Insurance Company) admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(rr).

ss.     Defendant Stronghold Insurance Company Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(ss).

tt.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(tt), and therefore deny same.

uu.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(uu), and therefore deny same.

vv.     Defendant Turegum Insurance Company Limited n/k/a Harper Insurance Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(vv).

ww.     Defendant Turegum Insurance Company Limited (improperly named as Turegum Insurance Company) n/k/a Harper Insurance Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese.  To the extent the allegations refer to the policies, they are written documents and speak for themselves.  LMI deny each and every other allegation contained in paragraph 7(ww).

15

xx.     LMI lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7(xx), and therefore deny same.

yy.     Defendant Ocean Marine Insurance Company Limited as successor-in-interest to World Auxiliary Insurance Corporation Limited admits it subscribed severally but not jointly to one or more Umbrella Liability Policies issued to the Archdiocese. To the extent the allegations refer to the policies, they are written documents and speak for themselves. LMI deny each and every other allegation contained in paragraph 7(yy).

8.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 8, and therefore deny same.

## BACKGROUND FACTS OF THE POLICIES

### Stonewall's Policy

9 -21.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraphs 9 through 21, and therefore deny same.

### Lloyd's Policies

22.     LMI admit that Exhibits B through J are copies of Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 issued to the Archdiocese. LMI deny each and every other allegation contained in paragraph 22.

23.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The policy periods, limits and numbers, as well as the respective several shares of any individual LMI, are

16

set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 23.

24.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The "Named Assured" and "Assured" provisions are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 24.

25.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions, limits, underlying insurances and Insuring Agreements are set forth in the policy documents. LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding the status of Donald Marshall and Dean Weissmuller as employees and their alleged loses as set forth in paragraph 25, and therefore deny same. LMI deny each and every other allegation contained in paragraph 25.

26.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Insuring Agreements are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 26 and corresponding footnote.

27.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions

17

are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 27.

28.    LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 28.

29.    LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 29.

30.    LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Limits of Liability are set forth in the policy documents. LMI deny each and every other allegation contained in paragraph 30.

31.    LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves.  To the extent that the allegations in paragraph 31 assert factual or legal conclusions, no response is required. LMI deny any remaining allegations in paragraph 31.

32.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves.  The Conditions are set forth in the policy documents.   To the extent that the allegations in paragraph 32 assert factual or legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 32.

**ALLEGATIONS OF MARSHALL AND WEISSMULLER**

**Dean Weissmuller**

33.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 33 and therefore deny same. The referenced Complaint, as a written document, speaks for itself.

34.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 34 and therefore deny same. The referenced Complaint, as a written document, speaks for itself.

35.     The allegations in paragraph 35 assert legal conclusions, and therefore no response is required. LMI deny each and every allegation contained in paragraph 35.

36.     The allegations in paragraph 36 assert legal conclusions, and therefore no response is required. LMI deny each and every allegation contained in paragraph 36.

37.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim.  The letter, as a written document, speaks for itself.  LMI deny each and every other allegation contained in paragraph 37.

38.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim.  The letter, as a written document, speaks for

19

itself. To the extent the allegation in paragraph 38 asserts a legal conclusion, no response is required. LMI deny each and every other allegation contained in paragraph 38.

**Donald Marshall**

39.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 39 and therefore deny same. The referenced Complaint, as a written document, speaks for itself.

40.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 40 and therefore deny same. The referenced Complaint, as a written document, speaks for itself.

41.     The allegations in paragraph 41 assert legal conclusions, and therefore no response is required. LMI deny each and every allegation contained in paragraph 41 directed to them. LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 41 directed to co-Defendant Stonewall and therefore deny same.

42.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 42 and therefore deny same. The referenced letter, as a written document, speaks for itself.

43.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 43 and therefore deny same.

**CLAIM FOR DECLARATORY RELIEF**

44.     LMI repeat and reallege paragraphs 1 through 43 above with the same force and effect as though fully set forth herein.

45.     To the extent the allegations in paragraph 45 assert legal conclusions, no response is required. The Statute cited by the Archdiocese is in writing and speaks for itself.     To the

extent the allegations contained in paragraph 45 deviate from or fail to completely cite to statutory provisions, the allegations are denied.

46.     To the extent the allegations in paragraph 46 assert legal conclusions, no response is required.  LMI deny each and every other allegation contained in paragraph 46.

47.     LMI admit only that they subscribed severally and not jointly to one or more Umbrella Liability Policies issued to the Archdiocese effective for the periods from July 1, 1967 to August 1, 1973.  To the extent the allegations rely on the policies, they are written documents and speak for themselves.  To the extent the allegations in paragraph 47 assert legal conclusions, no response is required. LMI deny any remaining allegations in paragraph 47.

48.     LMI admit only that the Umbrella Liability Policies were delivered in the State of Wisconsin.  LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 48 directed to co-Defendant Stonewall and therefore deny same.

49.     To the extent the allegations in paragraph 49 assert legal conclusions, no response is required.  LMI deny each and every other allegation contained in paragraph 49.

**First Declaration: Broader Coverage Than "Accidents"; No Avoidance Based on Attempted Defenses of Volition**

50.     LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 50 which are directed to co-Defendant Stonewall and therefore deny same.

51.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790,  MO-4857/9798,  MO-4862/9799,  MO-4863/9800,  MO-10420/5355,  MO-10421/5356, MO-10422/5413 are written documents and speak for themselves.  The Definitions and other coverage parts are set forth in the policy documents.   To the extent that the allegations

in paragraph 51 assert legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 51.

52.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions and other coverage parts are set forth in the policy documents.   To the extent that the allegations in paragraph 52 assert legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 52.

53.     LMI deny each and every allegation contained in paragraph 53.

54.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim. The letter, as a written document, speaks for itself. To the extent the allegations in paragraph 54, inclusive of Exhibit L, deviate from terms of that letter, the allegations are denied. LMI deny each and every other allegation directed to them contained in paragraph 54. LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 54 that are directed to co-Defendant Stonewall and Exhibit N and therefore deny same.

55.     To the extent that the allegations in paragraph 55 assert legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 55.

56.     LMI admit a controversy exists with respect to whether an indemnity obligation exists. To the extent that the allegations are directed towards LMI, they deny each and every allegation contained in paragraph 56. LMI deny the Plaintiffs' requested declarations and otherwise pray that this Court grant judgment in LMI's favor and against Plaintiffs.

**Second Declaration: All Sums**

57.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 are written documents and speak for themselves.  The Insuring Agreements, limits and other coverage parts are set forth in the policy documents.   To the extent that the allegations in paragraph 57 assert legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 57.

58.     LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 58 which are directed to co-Defendant Stonewall and therefore deny same.

59.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim.  The letter, as a written document, speaks for itself. To the extent the allegations in paragraph 59 deviate from the terms of that letter, the allegations are denied.  LMI deny each and every other allegation directed to them contained in paragraph 59.

60.     To the extent that the allegations in paragraph 60 assert legal conclusions, no response is required. LMI deny each and every other allegation contained in paragraph 60.

61.     LMI admit a controversy exists with respect to whether an indemnity obligation exists.  To the extent that the allegations are directed towards LMI, they deny each and every allegation contained in paragraph 61.   LMI deny the Plaintiffs' requested declarations and otherwise pray that this Court grant judgment in LMI's favor and against Plaintiffs.

**Third Declaration: The Phrase of "Unexpectedly and Unintentionally" And its Cognate Refer to the Damage, Not to the Causative Act**

62.     LMI state that Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-

10421/5356, MO-10422/5413 are written documents and speak for themselves. The Definitions and other coverage parts are set forth in the policy documents. LMI deny each and every other allegation that may be contained in paragraph 62.

63. LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 63 which are directed to co-Defendant Stonewall and therefore deny same.

64. LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim. The letter, as a written document, speaks for itself. To the extent the allegations in paragraph 64 deviate from the terms of that letter, the allegations are denied. LMI deny each and every other allegation directed to them contained in paragraph 64. LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 64 that are directed to co-Defendant Stonewall and Exhibit N and therefore deny same.

65. LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 65 and therefore deny same. The referenced Complaints, as written documents, speak for themselves. LMI deny any and all other allegations that may be contained in paragraph 65.

66. To the extent that the allegations in paragraph 66 assert legal conclusions, no response is required. LMI deny each and every allegation contained in paragraph 66.

67. LMI lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 67 which are directed to co-Defendant Stonewall and therefore deny same.

68.     To the extent that the allegations in paragraph 68 assert legal conclusions, no response is required. LMI deny each and every allegation contained in paragraph 68.

69.     LMI admit they contest the Archdiocese's contentions in paragraph 66 and state that they lack sufficient knowledge or information to form a belief to respond to the allegations in paragraph 67 which are directed to co-Defendant Stonewall.  To the extent there are other allegations in paragraph 69 directed to LMI, they are denied.

70.     LMI admit a controversy exists with respect to whether an indemnity obligation exists.  To the extent that the allegations are directed towards LMI, they deny each and every allegation contained in paragraph 70.   LMI deny the Plaintiffs' requested declarations and otherwise pray that this Court grant judgment in LMI's favor and against Plaintiffs.

**Fourth Declaration: Established Coverage for Negligent Misrepresentation and Provisional Coverage for Claims Alleged to Arise from Reckless Conduct**

71.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim.  The letter, as a written document, speaks for itself. To the extent the allegations in paragraph 71 deviate from terms of that letter, the allegations are denied.  LMI deny each and every other allegation directed to them contained in paragraph 71.  LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 71 that are directed to co-Defendant Stonewall and therefore deny same.

72.     To the extent that the allegations in paragraph 72 assert legal conclusions, no response is required. LMI deny each and every allegation contained in paragraph 72.   LMI further deny that the Plaintiffs are entitled to the requested declaration.

73.     LMI admit only that the document at Exhibit L is a letter from their counsel addressing coverage for the Weissmuller claim.  The letter, as a written document, speaks for

itself. To the extent the allegations in paragraph 73 deviate from terms of that letter, the allegations are denied. LMI deny any other allegation that may be directed to them contained in paragraph 73. LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 73 that are directed to co-Defendant Stonewall and therefore deny same.

74.     To the extent that the allegations in paragraph 74 assert legal conclusions, no response is required. LMI deny each and every allegation contained in paragraph 74.

75.     LMI lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 75 and therefore deny same. The referenced Complaints, as written documents, speak for themselves. LMI deny any and all other allegations that may be contained in paragraph 75.

76.     To the extent that the allegations in paragraph 76 assert legal conclusions, no response is required. LMI deny each and every allegation contained in paragraph 76.

77.     LMI admit a controversy exists with respect to whether an indemnity obligation exists. To the extent that the allegations are directed towards LMI, they deny each and every allegation contained in paragraph 77. LMI deny the Plaintiffs' requested declarations and otherwise pray that this Court grant judgment in LMI's favor and against Plaintiffs.

**For all Requests for Declarations**

78.     To the extent that the allegations in paragraph 78 assert legal conclusions, no response is required. LMI admit only they have not indemnified the Archdiocese for any legal fees and costs. LMI deny each and every other allegation contained in paragraph 78.

79.     LMI deny each and every allegation contained in paragraph 79.

26

WHEREFORE, To the extent that the allegations in the Wherefore paragraph are directed towards LMI, they deny each and every allegation. LMI further deny the Plaintiffs' requested declarations in paragraphs (a) through (d) and their requests for costs, disbursements and other relief and otherwise pray that this Court grant judgment in LMI's favor and against Plaintiffs.

## **LONDON MARKET INSURERS' AFFIRMATIVE DEFENSES**

NOW COME Defendants and Counter-Plaintiffs, Certain Underwriters at Lloyd's, London, Ageas Insurance Limited (f/k/a Bishopsgate Insurance Company Ltd.), Allianz Suisse Versicherungs-Gesellschaft AG (f/k/a Helvetia Accident Insurance Company, Helvetia Accident Gibbon N.M. Group, and Helvetia Accident Swiss Ins. Co.), Assicurazioni Generali S.p.A (f/k/a General Insurance Company of Trieste and Venice), Delta Lloyd Schadeverzekering NV (f/k/a Delta Lloyd Non Life Ltd.), Dominion Insurance Company Ltd., Excess Insurance Company Limited, Harper Insurance Limited (f/k/a Turegum Insurance Company Ltd.), Helvetia Swiss Insurance Company (f/k/a Alba General Insurance Company Limited), London & Edinburgh Insurance Company Limited (f/k/a London & Edinburgh General Ins. Co. Ltd., London & Edinburgh General Ins. Co., and London & Edinburgh General Ltd.), National Casualty Co., National Casualty Co. of America, National Casualty Co of America Ltd., NRG Victory Reinsurance Limited (f/k/a New London Reinsurance Ltd.), Ocean Marine Insurance Company Limited (as successor-in-interest to Edinburgh Assurance Company Limited No. 2 A/C), Ocean Marine Insurance Company Limited (as successor-in-interest to World Auxiliary Insurance Corporation Limited), River Thames Insurance Company Limited, Select Markets Insurance Company (f/k/a Argonaut Northwest Insurance Company), Stronghold Insurance Company Limited, and Winterthur Swiss Insurance Company (f/k/a Accident & Casualty Insurance Company, Accident & Casualty Company, Accident & Casualty No. 2 Account, Accident &

27

Casualty No. 3 Account, Accident & Casualty Ins. Co. of Winterthur, Accident & Casualty Ins. Co. of Winterthur No. 2 Account, and Accident & Casualty Ins. Co. of Winterthur No. 3 Account), (all answering Defendants herein collectively "London Market Insurers" or "LMI"), who subscribed severally and not jointly as their interests appear to one or more of Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413, by and through their attorneys, Sedgwick LLP and Duane Morris LLP, and as their Affirmative Defenses to the Declaratory Judgment Complaint filed by or on behalf of the Plaintiff Archdiocese of Milwaukee ("Archdiocese") and Additional Plaintiffs Donald Marshall and Dean Weissmuller (Plaintiff and Additional Plaintiffs collectively "Plaintiffs"), state as follows:

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Complaint fails, in whole or in part, by the terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations contained in Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 issued to the Archdiocese. The terms, exclusions, conditions, definitions, declarations, endorsements and/or limitations of the Umbrella Liability Policies are incorporated herein by reference.

### Third Affirmative Defense

The Umbrella Liability Policies are excess indemnity Policies with no duty to defend or settle.

28

## Fourth Affirmative Defense

There is no coverage for any entity or person that does not qualify as an Assured or Named Assured under the Umbrella Liability Policies.

## Fifth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese to the extent the Tort Claimants' allegations do not meet the LMI Policies' definition of "Occurrence" which requires "an accident or a happening or event . . . which unexpectedly and unintentionally results in personal injury . . . during the policy period."

## Sixth Affirmative Defense

There is no coverage for any ultimate net loss incurred in connection with any of the Tort Claimants' allegations of misrepresentation, recklessness, fraud and intentional conduct based on the Umbrella Liability Policies' definition of an "Occurrence."

## Seventh Affirmative Defense

There is no coverage for any ultimate net loss incurred in connection with any of the Tort Claimants' allegations of misrepresentation, recklessness, fraud and intentional conduct because any such loss would not constitute a fortuitous loss and/or would be prohibited under Wisconsin public policy.

## Eighth Affirmative Defense

There is no coverage for the Tort Claimants who previously asserted claims that were litigated to conclusion, settled or otherwise resolved by the Archdiocese.

## Ninth Affirmative Defense

There is no coverage for any Claim or Claimant if such Claim or Claimant asserted a claim against the Archdiocese prior to the Bankruptcy Proceeding and coverage for that Claim or

29

Claimant was resolved by LMI through the Archdiocese's acceptance of LMI's coverage position, litigation or compromise.

### Tenth Affirmative Defense

Upon information and belief, prior to purchasing the Umbrella Liability Policies, the Archdiocese was aware that certain of its priests had committed felonious sexual assaults that could result in claims against the Archdiocese. The Archdiocese omitted to inform LMI or misrepresented these facts before purchasing policies from them.

### Eleventh Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese unless there is an occurrence which unexpectedly and unintentionally results in personal injury during one of the periods of coverage effective from July 1, 1967 to August 1, 1973.

### Twelfth Affirmative Defense

All or some of the incidents of abuse alleged by the Tort Claimants pre-date or post-date the Umbrella Liability Policies.

### Thirteenth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese to the extent the alleged fraud or misrepresentation predated the inception of coverage on July 1, 1967.

### Fourteenth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese to the extent the fraud or misrepresentation gives rise to a single occurrence that entirely pre or post-dates LMI's coverage.

30

### Fifteenth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese for any portion of expense, loss, or damage that is allocable to periods or years of coverage other than the periods of coverage of the Umbrella Liability Policies effective from July 1, 1967 to August 1, 1973.

### Sixteenth Affirmative Defense

The Archdiocese is not obligated to pay the Tort Claimants by reason of liability imposed by law as required by the Umbrella Liability Policies because the Tort Claimants' claims are barred by the statute of limitations and/ or there is no legal liability for the claims.

### Seventeenth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese to the extent that the Tort Claimants' allegations do not meet the Policies' definition of "Personal Injury."

### Eighteenth Affirmative Defense

The Umbrella Liability Policies do not provide coverage to the Archdiocese to the extent that any payment in connection with the Tort Claims does not meet the Policies' definition of "Ultimate Net Loss."

### Nineteenth Affirmative Defense

The Umbrella Liability Policies attach, if at all, only after all of the Limit(s) of Liability of any applicable underlying insurance and/ or any applicable underlying limits have been exhausted by payment of claims, regardless of the exhaustion or unavailability of such underlying insurance and/ or underlying limits.

31

## Twentieth Affirmative Defense

There is no coverage for any claim known to be false or fraudulent and coverage under the Umbrella Liability Policies shall become void and all claims thereunder shall be forfeited if any such claim is made.

## Twenty-First Affirmative Defense

The Umbrella Liability Policies contain a Loss Payable Condition that provides: "Liability under this policy with respect to any occurrence shall not attach unless or until the Assured or Assured's underlying insurer, shall have paid the amount of the underlying limits…." This Condition also requires that "the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant and Underwriters."

## Twenty-Second Affirmative Defense

Under the Excess Umbrella Liability Policies, liability attaches only after the Underlying Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability.

## Twenty-Third Affirmative Defense

The Archdiocese's concession that the Tort Claimants' claims do not give rise to an "occurrence" for purposes of insurance coverage when that term is defined as an "accident" precludes coverage for the Tort Claimants' claims under the Umbrella Liability Policies.

## Twenty-Fourth Affirmative Defense

Any available insurance coverage from the Umbrella Liability Policies would be subject to the per occurrence and any aggregate limits.

32

### Twenty-Fifth Affirmative Defense

The Tort Claimants' claims against the Archdiocese may be excluded in whole or in part by reason of the Exclusion in the Umbrella Liability Policies for "liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured…."

### Twenty-Sixth Affirmative Defense

Punitive damages are excluded from coverage under the definition of "occurrence", Wisconsin law and public policy and therefore any portion of any settlement or verdict covering the Archdiocese's exposure to punitive damages is not covered.

### Twenty-Seventh Affirmative Defense

The ultimate net loss paid by the Archdiocese as a result of the Tort Claimants' actions may be excluded in whole or in part by reason of the fact that any ultimate net loss payments are not allocated among covered and uncovered claims.

### Twenty-Eighth Affirmative Defense

The Tort Claimants' claims against the Archdiocese may be excluded in whole or part by reason of the fact that the Archdiocese failed to allow LMI to become associated with the Archdiocese in the defense and control of the claims as required by the Policies.

### Twenty- Ninth Affirmative Defense

The Tort Claimants' claims against the Archdiocese may be excluded in whole or in part by reason of the fact that the Archdiocese failed to cooperate with LMI "in all things in the defense of[the] claims[s]" as required by the Policies.

### Thirtieth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Other Insurance" Condition in the Umbrella Liability Policies.

33

### Thirty-First Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the fact that any ultimate net loss paid by the Archdiocese is unreasonable or is not by reason of legal liability imposed by law.

### Thirty-Second Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Maintenance of Underlying Insurances" Condition.

### Thirty-Third Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Assignment" Condition.

### Thirty-Fourth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Prior Insurance and Non Cumulation of Liability" Condition.

### Thirty-Fifth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Notice of Occurrence" Condition.

### Thirty-Sixth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the "Loss Payable" Condition.

### Thirty-Seventh Affirmative Defense

The Archdiocese's claims against LMI are barred by the doctrines of waiver, estoppel and laches.

## Thirty-Eighth Affirmative Defense

At all times LMI acted under legal right or in good faith belief in the existence of a legal right.

## Thirty-Ninth Affirmative Defense

The liability of any individual LMI is limited to its respective proportion of liability, if any, is as set forth in the Policies.

## Fortieth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of lack of justiciability.

## Forty-First Affirmative Defense

The Complaint fails, in whole or in part, because this matter is not ripe for adjudication at this time -- thus not satisfying the requirement for adjudication of "actual" cases and controversies under Article III Section 2 of the United States Constitution -- as the Plaintiffs' do not allege that LMI have a duty to defend. The Umbrella Liability Policies are excess indemnity policies with no duty to defend. The Tort Claimants' claims are ongoing and remain unresolved.

## Forty-Second Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of accord and satisfaction, payment or release.

## Forty-Third Affirmative Defense

The claims against LMI may be barred in whole or in part by reason by assumption of risk or contributory negligence.

### Forty-Fourth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of failure of consideration.

### Forty-Fifth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of fraud or illegality.

### Forty-Sixth Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of res judicata.

### Forty-Seventh Affirmative Defense

The claims against LMI may be barred in whole or in part by reason of the statute of limitations.

### Forty-Eighth Affirmative Defense

LMI reserve the right to raise additional affirmative defenses based upon the Policies or otherwise, although they cannot be set forth at this time due to the general nature of Plaintiffs' claims.

### COUNTERCLAIM FOR DECLARATORY JUDGMENT

NOW COME the Defendants and Counter-Plaintiffs, Certain Underwriters at Lloyd's, London, Ageas Insurance Limited (f/k/a Bishopsgate Insurance Company Ltd.), Allianz Suisse Versicherungs-Gesellschaft AG (f/k/a Helvetia Accident Insurance Company, Helvetia Accident Gibbon N.M. Group, and Helvetia Accident Swiss Ins. Co.), Assicurazioni Generali S.p.A (f/k/a General Insurance Company of Trieste and Venice), Delta Lloyd Schadeverzekering NV (f/k/a Delta Lloyd Non Life Ltd.), Dominion Insurance Company Ltd., Excess Insurance Company Limited, Harper Insurance Limited (f/k/a Turegum Insurance Company Ltd.), Helvetia Swiss Insurance Company (f/k/a Alba General Insurance Company Limited), London & Edinburgh

Insurance Company Limited (f/k/a London & Edinburgh General Ins. Co. Ltd., London & Edinburgh General Ins. Co., and London & Edinburgh General Ltd.), National Casualty Co., National Casualty Co. of America, National Casualty Co of America Ltd., NRG Victory Reinsurance Limited (f/k/a New London Reinsurance Ltd.), Ocean Marine Insurance Company Limited (as successor-in-interest to Edinburgh Assurance Company Limited No. 2 A/C), Ocean Marine Insurance Company Limited (as successor-in-interest to World Auxiliary Insurance Corporation Limited), River Thames Insurance Company Limited, Select Market Insurance Company (f/k/a Argonaut Northwest Insurance Company), Stronghold Insurance Company Limited, and Winterthur Swiss Insurance Company (f/k/a Accident & Casualty Insurance Company, Accident & Casualty Company, Accident & Casualty No. 2 Account, Accident & Casualty No. 3 Account, Accident & Casualty Ins. Co. of Winterthur, Accident & Casualty Ins. Co. of Winterthur No. 2 Account, and Accident & Casualty Ins. Co. of Winterthur No. 3 Account) (all Defendants-Counter-Plaintiffs herein collectively "London Market Insurers" or "LMI"), who subscribed severally and not jointly as their interests appear to one or more of Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO10421/5356, MO-10422/5413, by and through their attorneys, Sedgwick LLP and Duane Morris LLP, and for their Counterclaim against Plaintiff and Counter-Defendant, the Archdiocese of Milwaukee ("Archdiocese"), pursuant to 28 U.S.C. § 2201, state as follows:

## THE PARTIES

1.       Defendants and Counter-Plaintiffs Underwriters at Lloyd's, London are members of an Association with a principal place of business in London, England.

2.      Defendants and Counter-Plaintiffs Ageas Insurance Limited (f/k/a Bishopsgate Insurance Company Ltd.), Allianz Suisse Versicherungs-Gesellschaft AG (f/k/a Helvetia Accident Insurance Company, Helvetia Accident Gibbon N.M. Group, and Helvetia Accident Swiss Ins. Co.), Assicurazioni Generali S.p.A (f/k/a General Insurance Company of Trieste and Venice), Delta Lloyd Schadeverzekering NV (f/k/a Delta Lloyd Non Life Ltd.), Dominion Insurance Company Ltd., Excess Insurance Company Limited, Harper Insurance Limited (f/k/a Turegum Insurance Company Ltd.), Helvetia Swiss Insurance Company (f/k/a Alba General Insurance Company Limited), London & Edinburgh Insurance Company Limited (f/k/a London & Edinburgh General Ins. Co. Ltd., London & Edinburgh General Ins. Co., and London & Edinburgh General Ltd.), National Casualty Co., National Casualty Co. of America, National Casualty Co of America Ltd., NRG Victory Reinsurance Limited (f/k/a New London Reinsurance Ltd.), Ocean Marine Insurance Company Limited (as successor-in-interest to Edinburgh Assurance Company Limited No. 2 A/C), Ocean Marine Insurance Company Limited (as successor-in-interest to World Auxiliary Insurance Corporation Limited), River Thames Insurance Company Limited, Select Market Insurance Company (f/k/a Argonaut Northwest Insurance Company), Stronghold Insurance Company Limited, and Winterthur Swiss Insurance Company (f/k/a Accident & Casualty Insurance Company, Accident & Casualty Company, Accident & Casualty No. 2 Account, Accident & Casualty No. 3 Account, Accident & Casualty Ins. Co. of Winterthur, Accident & Casualty Ins. Co. of Winterthur No. 2 Account, and Accident & Casualty Ins. Co. of Winterthur No. 3 Account) (collectively the "London Market Companies"), are foreign insurance corporations.

3.      Defendants and Counter-Plaintiffs Underwriters at Lloyd's, London and London Market Companies (collectively "London Market Insurers" or "LMI"), subscribed severally and

not jointly as their interests appear to one or more of Umbrella Liability Policy Nos. MO-8537/3789, MO-8539/3791, MO-8538/3790, MO-4857/9798, MO-4862/9799, MO-4863/9800, MO-10420/5355, MO-10421/5356, MO-10422/5413 issued to the Archdiocese of Milwaukee.

4.     Upon information and belief, Plaintiff and Counter-Defendant Archdiocese of Milwaukee ("Archdiocese") is a religious corporation organized under the laws for the State of Wisconsin and is located at 3501 South Lake Drive, St. Francis, Wisconsin 53235.

## JURISDICTION AND VENUE

5.     Defendants and Counter-Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §2201(a) and a trial by jury on all issues so triable.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§157(a) as a non-core, related to proceeding.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.   However, LMI do not consent to the entry of a final order or judgment by this Court.

## PRIOR TORT CLAIM LITIGATION INVOLVING THE ARCHDIOCESE

8.     The Plaintiff and Counter-Defendant Archdiocese has been named a defendant in multiple lawsuits alleging sexual abuse by Archdiocesan priests.  In those lawsuits, the claimants asserted negligence, fraud, negligent misrepresentation and other theories against the Archdiocese.

9.     Claimants John Does I, II, III and Linneman filed lawsuits against the Archdiocese of Milwaukee in the Circuit Court for Milwaukee County, Wisconsin, alleging sexual abuse by Frs. Widera and Becker. In 2006, the trial court, hearing the John Does/Linneman litigation, granted the Archdiocese's motion for summary judgment based on statute of limitations and the First Amendment bars to claims of negligence against a religious

entity.  In July 2007, the Wisconsin Supreme Court, in *John Doe 1, et al. v. Archdiocese of Milwaukee*, 734 N.W.2d 827 (Wisc. 2007), affirmed the dismissal of negligence claims, but remanded the fraud claims for further discovery regarding when the six year statute of limitations began to run.  The Wisconsin Supreme Court in *John Doe 1* held that the discovery rule did not toll Claimants' negligence claims against the Archdiocese because the claims were "derivative" of claims against the perpetrator and "accrued by the time of the last incident of sexual assault." 734 N.W.2d at 838-39.  The Court further held that claims of repressed memory do not delay the accrual of a cause of action for non-incestuous sexual assault, regardless of a claimant's minority and the position of trust occupied by the alleged perpetrator.  *Id.*

10.     The Archdiocese has also been involved in litigation with LMI and its other insurers regarding coverage for sexual abuse claims.  For example, the trial court in *John Doe 1, et al v. Archdiocese of Milwaukee*, found that there was no coverage for the Archdiocese for fraud and negligent misrepresentation claims.  The Archdiocese appealed the decision of no coverage for misrepresentation and the Wisconsin Court of Appeals held that no coverage existed because negligent misrepresentation by the Archdiocese is volitional.  *John Doe 1, et. al v. Archdiocese of Milwaukee*, 794 N.W.2d 468 (Wis. Ct. App. 2010). The Archdiocese petitioned the Wisconsin Supreme Court to review the decision, but that proceeding was stayed when the Archdiocese filed for bankruptcy protection.

11.     On January 4, 2010, the Archdiocese filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Wisconsin.  *In re: Archdiocese of Milwaukee*, Debtor, Case No. 11-20059 (Bankr. E.D. Wis. 2011) (the "Bankruptcy Proceeding").

## THE TORT CLAIMS

12.     Upon information and belief, there were 576 Proofs of Claim filed in the Bankruptcy Proceeding on or before the February 1, 2012 bar date by or on behalf of claimants who alleged they were sexually abused (the "Tort Claims").

13.     Upon information and belief, the Archdiocese has asserted legal defenses to the Tort Claims, including the statute of limitations, prior settlements, and no liability. On February 9, 2012, Bankruptcy Judge Kelley issued a ruling, granting in part the Archdiocese's motion for summary judgment and holding that the negligence causes of action of three claims (A12, A13 and A49) were barred by the statute of limitations, whereas the fraud causes of action contained issues of fact preventing ruling as a matter of law.

14.     The Archdiocese did not seek coverage from LMI for the Tort Claimants' Proofs of Claim. This is because it understood that any negligence claims by the Tort Claimants were barred by the statute of limitations under Wisconsin law and because there was no coverage for any remaining causes of action based on the prior litigations.

15.     Through a mediation in the Bankruptcy Proceeding, which took place between August and October 2012, the Archdiocese provided copies of the 576 Tort Claims to coverage counsel for LMI subject to a confidentiality agreement and protective order.

16.     The 576 Tort Claims allege various types of sexual misconduct. The allegations of abuse are made against dozens of Archdiocesan priests, including 42 priests the Archdiocese publicly disclosed in 2004 as being known abusers, and also against order priests and other religious persons and laypersons.

17.     Many of the 576 Tort Claimants previously asserted claims against the Archdiocese and those previous claims were litigated to conclusion and/ or settled. The

41

Archdiocese previously tendered some of these previous claims to LMI and LMI were released from coverage obligations as a result of prior coverage litigation with the Archdiocese and/or by prior settlements involving some of the Claimants who asserted Tort Claims against the Archdiocese.

18. The Archdiocese has not tendered the Tort Claims to LMI.

19. However, on September 5, 2012, attorney John Rothstein of Quarles and Brady wrote to LMI's counsel and asserted that 132 claimants (out of 576 claimants) alleged abuse that took place, in whole or in part, during the periods when LMI issued Umbrella Liability Policies.

20. While there has not otherwise been a tender of the Tort Claims, LMI, along with other London Market Insurers signatory to Policies issued for the periods from May 15, 1982 to July 1, 1987 who are not parties to this Adversary Proceeding, out of an abundance of caution, set forth their position as to coverage for the Tort Claims in a letter dated October 22, 2012 wherein they reserved all rights. Attached as Ex. A herein is a true and correct copy of the October 22, 2012 letter.

## THE UMBRELLA LIABILITY POLICIES

21. LMI subscribed to Umbrella Liability and Excess Umbrella Liability Policies issued to the Archdiocese effective for the periods from July 1, 1967 to August 1, 1973. Specifically, LMI subscribed to: Umbrella Liability Policy No. MO-8537/3789 effective from July 1, 1967 to August 1, 1970 with limits of $1 million excess of Underlying Insurance; Umbrella Liability Policy No. MO- 9798/4857 effective from August 1, 1970 to August 1, 1972 with limits of 85% of $1 million excess of Underlying Insurance; and, Umbrella Liability Policy No. MO-10420/5355 effective from August 1, 1972 to August 1, 1973 with limits of 87% of $1 million excess of Underlying Insurance (collectively "Umbrella Liability Policies"). Attached as

Exs. B, C, and D, respectively, are true and correct copies of the above mentioned Umbrella Liability Policies.

22.     The Umbrella Liability Policies are all excess of either: (1) any Underlying Insurance, including scheduled underlying insurance with limits of $100,000 per occurrence, or (2) $10,000 each occurrence not covered by Underlying Insurance. The limits are ultimate net loss limits and include legal expenses and any covered loss amounts.

23.     LMI also subscribed to: First Excess Umbrella Liability Policy No. MO-8539/3791 effective from July 1, 1967 to August 1, 1970; First Excess Umbrella Policy No. MO-9799/4862 effective from August 1, 1970 to August 1, 1972; and, First Excess Umbrella Policy No. MO -10421/5356 effective from August 1, 1972 to August 1, 1973. These each have limits of $4 million each occurrence excess $1 million (collectively "First Excess Umbrella Liability Policies"). Attached as Exs. E, F, and G, respectively, are true and correct copies of the above mentioned First Excess Umbrella Liability Policies.

24.     LMI also subscribed to: Second Excess Umbrella Liability Policy No. MO-8538/3790 effective from July 1, 1967 to August 1, 1970; Second Excess Umbrella Policy No. MO -9800/4863 effective from August 1, 1970 to August 1, 1972; and Second Excess Umbrella Policy No. MO -10422/5413 effective from August 1, 1972 to August 1, 1973. These each have limits of $5 million each occurrence excess $5 million (collectively "Second Excess Umbrella Liability Policies"). Attached as Exs. H, I, and J, respectively, are true and correct copies of the above mentioned Second Excess Umbrella Liability Policies.

25.     The Archdiocese is not seeking coverage under any policies subscribed to by LMI, except the Umbrella Liability Policies, First Excess Umbrella Liability Policies, and Second Excess Umbrella Liability Policies described above. The Archdiocese recognizes that

43

there is no coverage under other policies subscribed to by LMI.

26. The Umbrella Liability Policies have a provision that provides "If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Cover Note shall become void, and all claims thereunder shall be forfeited."

27. The Umbrella Liability Policies contain the following Insuring Agreement:

I.    COVERAGE

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law, or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:

(i) Personal Injuries, including death at any time resulting therefrom,

(ii) Property Damage,

(iii) Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world.

II.    LIMIT OF LIABILITY

Underwriters hereon shall only be liable for the ultimate net loss the excess of either

(a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said the underlying insurances, or

(b) $10,000 ultimate net loss in respect of each occurrence not covered by said underlying insurances, (hereinafter called the "underlying limits);

and then only up to a further sum as stated in Item 2 (a) of the Declarations in respect of each occurrence - subject to a limit as stated in

44

Item 2 (b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by occupational Disease sustained by any employees of the Assured. . .

*     *     *

The inclusion or addition hereunder of more than one Assured shall not operate to increase Underwriters' limit of liability.

28.   The Umbrella Liability Policies contain the following Definitions:

1. <u>ASSURED</u>

The unqualified word "Assured", wherever used in this policy, includes not only the Named Assured but also-

(a)   any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such . . .

(b)   any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named assured or of facilities of the named Assured or used by them; *   *        *

2. <u>PERSONAL INJURIES</u>

The term "Personal Injuries" wherever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation; also a libel, slander or defamation of character or invasion of the rights of privacy, except that which arises out of any Advertising activities.

*     *     *

5. <u>OCCURRENCE</u>

The term "Occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

Case 12-02835-svk    Doc 20    Filed 01/15/13    Page 45 of 60

6. ULTIMATE NET LOSS

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurer's permanent employees.

The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

29.    The Umbrella Liability Policies have the following Endorsement:

It is agreed that the Named Assured is as follows:

The Archbishop of the Roman Catholic Archdiocese of Milwaukee, and his successor in office or temporary administrator in said office; officers of said Archdiocese of Milwaukee, of the Chancery office and of the Ecclesiastical Tribunal; the Archdiocese of Milwaukee, a Wisconsin Corporation; all Roman Catholic parishes and congregations, corporate or otherwise, being Ecclesiastical subdivisions of said Archdiocese of Milwaukee; all entities or organizations, corporate or otherwise, which are listed in the Archdiocese of Milwaukee Section of the current annual edition of The Official Catholic Directory published annually by the P.J. Kenedy and Sons, 12 Barclay Street, New York, 10007, or listed at the Chancery Office of the Archdiocese of Milwaukee as pending additions to this annual publication, but limited to activities and property ownership originating within the Archdiocese of Milwaukee, and exclusive of colleges, hospitals, or Homes for the Aged unless specifically scheduled herein by name; and all corporate and/or religious officers and employees of all the foregoing named insureds while operating within the scope of their duties as such.

30.    The Umbrella Liability Policies are subject to the following Exclusion:

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the at ached Schedule, this policy shall not apply:-

46

(e)    to liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be an assault or battery committed for the purpose of preventing . . . personal injury or property damage . . ;

31.    The Umbrella Liability Policies are subject to the following Conditions:

C.  PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Item 2 of the Declarations shall be reduced by any amount due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this policy Underwriters will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

*       *       *

E.  INSPECTION AND AUDIT

Underwriters shall be permitted at all reasonable times during the policy period to inspect the premises, plants, machinery and equipment used in connection with the Assureds business, trade or work, and to examine the Assured's books and records at any time during the currency hereof and within one year after final settlement of all claims so far as the books and records relate to any payments made on account of occurrences happening during the term of' this policy.

*       *       *

G.  NOTICE OF OCCURRENCE

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 3 of the Declarations [Stewart Smith North America] as soon as practicable, provided, however, that failure to give notice of any occurrence, which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

## H. ASSISTANCE AND CO-OPERATION

The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

\*       \*       \*

## J. LOSS PAYABLE

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrences. The Assured shall make definite claim for any loss for which the Underwriters may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters. If any subsequent payments shall be made by the Assured on account of the same occurrence additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

\*       \*       \*

## L. OTHER INSURANCE

If other valid and collectible Insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

\*       \*       \*

48

O. **ASSIGNMENT**

Assignment of interest under this policy shall not bind Underwriters unless and until their consent is endorsed hereon.

\*      \*      \*

T. **MAINTENANCE OF UNDERLYING INSURANCES**

It is a condition of this Policy that the policy or policies referred to in the attached "Schedule of Underlying Insurance" shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy. Failure of the Assured to comply with the foregoing shall not invalidate this Policy but in the event of such failure, the Underwriters shall only be liable to the same extent as it would have been had the Assured complied with the said condition.

32.      The Umbrella Liability Policies contain the following "Schedule of Underlying Insurances":

| TYPE OF COVERAGE | MINIMUM LIMITS OF LIABILITY |
|---|---|
| Comprehensive General Liability including Occurrence BI and PD; Personal Injury and Products/Completed Operations | BI $100,000/300,000/300,000<br><br>PD $50,000/50,000 |

33.      The 1967 to 1973 First and Second Excess Umbrella Liability Policies generally follow the Umbrella Liability Policies.

## COUNT I: DECLARATORY JUDGMENT

34.      Defendants and Counter-Plaintiffs LMI reallege paragraphs 1 through 33 above as if fully set forth and incorporated herein.

35.      The Insuring Agreements in the Umbrella Liability Policies subscribed to by LMI effective for the periods from July 1, 1967 to August 1, 1973 agree, "subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability (a) imposed upon the Assured by law,

49

or (b) assumed under contract or agreement … for damages, direct or consequential and expenses, all as more fully defined by the term 'ultimate net loss' on account of: (i) Personal Injuries, including death at any time resulting therefrom … caused by or arising out of each occurrence happening anywhere in the world."

(a)     Upon information and belief, the Tort Claimants are alleging causes of action against the Archdiocese for negligence, recklessness, negligent misrepresentation, misrepresentation, intentional misrepresentation, intentional conduct, and fraud. Many of the Tort Claimants' causes of action are barred by statutes of limitations. Therefore since the Umbrella Liability Policies only indemnify the Archdiocese for sums it is obligated to pay by reason of "liability … imposed upon the Assured by law," there is no coverage under the Umbrella Liability Policies for the Tort Claimants' claims that are barred by statutes of limitations.

(b)     Further, to the extent the Tort Claimants' are asserting that they have potential causes of action that are not barred by statutes of limitations or that some tolling argument exits to suspend application of the statute of limitations, then they will have to show: (1) that those potential causes of action are timely; and, (2) that those claims are viable and give rise to legal liability on the part of the Archdiocese.  The Tort Claimants have not proved tolling or legal liability and any such showings would be extremely difficult, if not impossible.  Thus, to the extent the Archdiocese has not incurred any legal liability for any Tort Claims alleging negligence, recklessness, negligent misrepresentation, misrepresentation, intentional misrepresentation, intentional conduct, or fraud, there is no coverage under any Umbrella Liability Policies subscribed to by LMI.

(c)     Even if the Archdiocese were able to show legal liability for the Tort Claims, it would still have to show that any such liability constitutes "ultimate net loss" on account of "Personal Injuries" as those terms are defined in the Umbrella Liability Policies.  There has been no such showing.

(d)     Further, even if there has been a showing of legal liability imposed by law, ultimate net loss and Personal Injury, there would still need to be a showing of an "Occurrence", which is defined in the Umbrella Liability Policies as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury… during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." There is no coverage to the Archdiocese under the Umbrella Liability Policies subscribed to by LMI for any Tort Claims that allege recklessness, negligent misrepresentation, misrepresentation, intentional misrepresentation, any intentional conduct, or fraud, as such allegations and any injuries arising therefrom do not give rise to an "occurrence."

(e)     There is no coverage to the Archdiocese under the Umbrella Liability Policies subscribed to by LMI for any ultimate net loss incurred in connection with any of the Tort Claimants' allegations of recklessness or negligent misrepresentation based on the Archdiocese's representations that its priests did not have a history of sexually abusing children, because any such loss would not constitute a fortuitous loss and/or would be prohibited under Wisconsin public policy.

51

(f)     There is also no coverage to the Archdiocese under the Umbrella Liability Policies subscribed to by LMI for any ultimate net loss incurred in connection with any of the Tort Claimants' allegations of misrepresentation, intentional misrepresentation, intentional conduct, or fraud because any such loss would not constitute a fortuitous loss and/or would be prohibited under Wisconsin public policy.

36.     The Umbrella Liability Policies subscribed to by LMI do not provide coverage to the Archdiocese for any Tort Claimants who previously asserted claims that were litigated to conclusion, settled or otherwise resolved by the Archdiocese. Also, the Umbrella Liability Policies subscribed to by LMI do not provide coverage for any Tort Claim if any such Tort Claim or Claimant asserted a claim against the Archdiocese prior to the Bankruptcy Proceeding and coverage for that Tort Claim or Claimant was resolved by LMI through the Archdiocese's acceptance of LMI's coverage position, litigation, or compromise.

37.     The Umbrella Liability Policies subscribed to by LMI are excess indemnity Policies with no duty to defend or settle. Therefore, LMI are only obligated to indemnify the Archdiocese at the conclusion of the Tort Claims to the extent, if any, there is covered ultimate net loss and any such covered loss exceeds any and all underlying insurance and/or underlying limits.

38.     The Umbrella Liability Policies provide that LMI "shall only be liable for the ultimate net loss the excess of either (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said the underlying insurances, or (b) $10,000 ultimate net loss in respect of each occurrence not covered by said underlying insurances, (hereinafter called the "underlying limits)...."     The Umbrella Liability Policies

52

contain a "Schedule of Underlying Insurances," listing the minimum limits of liability for personal injury as "$100,000/$300,000/$300,000." The Umbrella Liability Policies subscribed to by LMI do not provide coverage because the Archdiocese has not shown that the Scheduled Underlying Insurance and/or the $10,000 ultimate net loss in respect of each occurrence has been exhausted or paid.

39.     Many the Tort Claims implicate Archdiocesan Parishes, other related entities and individuals.  The Umbrella Liability Policies have a "Name of Assured" provision that provides, in part: "It is agreed that the Archdiocese of Milwaukee, et al. owns / or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds," as well as an "Assured" Definition  that provides, in part, that an "Assured" includes "any officer, director, shareholder, partner or employee of the Named Assured, while acting in his capacity as such." There is no coverage for any entity or individual that does not qualify as an Assured under the Umbrella Liability Policies.

40.     In the event the Archdiocese (or any other non-debtor Assured) ultimately pays any sums for pastoral or counseling services or to settle the Tort Claims without due consideration of the merits of available defenses, including the statute of limitations or a Tort Claimant's failure to prove recklessness, negligent misrepresentation, misrepresentation, intentional misrepresentation, any intentional conduct, or fraud, any such sums would not constitute sums which the Archdiocese (or any other non-debtor Assured) is obligated to pay by reason of liability imposed by law or in exchange for release of a covered claim.  Therefore, there is no coverage under the Umbrella Liability Policies subscribed to by LMI to the extent the

Archdiocese (or any other non-debtor Assured) pays sums not incurred by reasons of liability imposed by law or in exchange for the release of a covered claim.

41.     There is no liability under the Umbrella Liability Policies subscribed to by LMI to the extent the Archdiocese has breached any of the Policy Conditions.

(a)     The Assistance and Co-Operation Condition provides: "Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding".  Based on information and belief, the Archdiocese breached this Condition.

(b)     The Loss Payable Condition provides: "Liability under this policy with respect to any occurrence shall not attach unless or until the Assured or Assured's underlying insurer shall have paid the amount of the underlying limits…."  This Condition further provides that "the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant and Underwriters."  There is no coverage under the Umbrella Liability Policies because this Condition has not been satisfied by the Archdiocese.

(c)     There is an Other Insurance Condition and, based on information and belief, to the extent there is any insurance coverage for the Tort Claims, other insurance applies to satisfy any covered loss.

(d)      There is no coverage under the Umbrella Liability Policies subscribed to by LMI to the extent that the Archdiocese breached the <u>Maintenance of Underlying Insurances</u> Condition which states that "it is a condition of this Policy that the policy or policies referred to in the attached "Schedule of Underlying Insurance" shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy. Failure of the Assured to comply with the foregoing shall not invalidate this Policy but in the event of such failure, the Underwriters shall only be liable to the same extent as it would have been had the Assured complied with the said condition."

(e)      There is no coverage under the Umbrella Liability Policies subscribed to by LMI because, based on information and belief, the Archdiocese breached the <u>Notice of Occurrence</u> Condition which states that "whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent . . . as soon as practicable."

(f)      There is no coverage under the Umbrella Liability Policies subscribed to by LMI to the extent that the <u>Prior Insurance and Non-Cumulation of Liability</u> Condition applies. That Condition provides, in part, that "it is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability

55

hereon as stated in Item 2 of the Declarations shall be reduced by any amount due to the Assured on account of such loss under such prior insurance . . ."

(g)     There is no coverage under the Umbrella Liability Policies for any loss that violates the <u>Assignment</u> Condition.

42.     There is no coverage under the Umbrella Liability Policies subscribed to by LMI for any award, punitive or otherwise, which may be uninsurable under Wisconsin law or public policy.

43.     There is no coverage under the Umbrella Liability Policies subscribed to by LMI for any claims against the Archdiocese that may be excluded in whole or in part by reason of the Exclusion in the Umbrella Liability Policies for "liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured…."

44.     There is no coverage under the Umbrella Liability Policies subscribed to by LMI for any claim known to be false or fraudulent.  In addition, coverage under the Umbrella Liability Policies becomes void and all claims thereunder are forfeited if any such claim is made.

45.     In the event of coverage liability, which is denied, the obligations of the Lloyd's Underwriters and the signatory London Companies are several only, up to the amount of the risk specified in the Umbrella Liability Policies, and not joint.

46.     The Umbrella Liability Policies do not provide coverage to the Archdiocese unless there is an occurrence which unexpectedly and unintentionally results in personal injury during one of the periods of coverage effective from July 1, 1967 to August 1, 1973.

47.     There is no coverage under the Umbrella Liability Policies subscribed to by LMI for Tort Claims that complain of acts or abuse that either pre-date or post-date the Umbrella Liability Policies.

56

48.    In the alternative, there is no coverage under the Umbrella Liability Policies subscribed to by LMI to the extent the alleged recklessness, misrepresentation, or fraud predated the inception of coverage on July 1, 1967.

49.    In the alternative, there is no coverage under the Umbrella Liability Policies subscribed to by LMI to the extent the alleged recklessness, misrepresentation, or fraud gives rise to a single occurrence that entirely pre-dates or post-dates the coverage under Umbrella Liability Policies.

50.    In the alternative, there is no coverage under the Umbrella Liability Policies subscribed to by LMI for any portion of expense, loss, or damage that is allocable to periods or years of coverage other than the periods of coverage of the Umbrella Liability Policies effective from July 1, 1967 to August 1, 1973.

51.    In the alternative, facts issues might exist regarding the nature, extent and number of occurrences and trigger of coverage for recklessness, negligent misrepresentation, misrepresentation, intentional misrepresentation, any intentional conduct, or fraud.

WHEREFORE, LMI, each for himself and itself and not one for the other, each of which subscribed severally and not jointly to certain of the Umbrella Liability Policies issued to the Archdiocese, demand a trial by jury of all issues so triable and judgment and affirmative relief as follows:

    A.  Dismissing the Declaratory Judgment Complaint filed by the Archdiocese;

    B.  Seeking a declaration that there is no coverage under the Umbrella Liability Policies as set forth in the Affirmative Defenses and Counterclaim herein for any of the Tort Claims; and,

    C.  For such other and further relief as the Court may deem just and equitable.

Dated this 15th day of January 2013.

By:___/s/ Catalina J. Sugayan_____
Catalina J. Sugayan, Esq.
Marcos G. Cancio, Esq.
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL  60606
312-641-9050 (phone)
312-641-9530 (fax)
catalina.sugayan@sedgwicklaw.com
marcos.cancio@sedgwicklaw.com

Russell W. Roten, Esq.
Jeff D. Kahane, Esq.
DUANE MORRIS LLP
864 South Figueroa Street
Suite 3100
Los Angeles, CA  90017
213-689-7431 (phone)

Attorneys for London Market Insurers

CH/428930v2

58

In re:                                                  Bankr. Case No. 11-20059-svk

ARCHDIOCESE OF MILWAUKEE,                                Chapter 11

                            Debtor.                     Hon. Susan V. Kelley

---

**ARCHDIOCESE OF MILWAUKEE**

                    Plaintiff,
        and                                             Adv. Pro No. 12-02835-svk

**DONALD MARSHALL**

        and

**DEAN WEISSMULLER**

                    Additional Plaintiffs,
        vs.

**STONEWALL INSURANCE COMPANY,**
**UNDERWRITERS AT LLOYD'S,**
**LONDON**, subscribing to policy numbers
MO-8537/3789, MO-8539/3791, MO-
8538/3790, MO-4857/9798, MO-4862/9799,
MO-4863/9800, MO-10420/5355, MO-
10421/5356, MO-10422/5413, **et al.,**

Catalina J. Sugayan
Marcos G. Cancio
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone:  (312) 641-9050
Facsimile:  (312) 641-9530
Email:  catalina.sugayan@sedgwicklaw.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney with Sedgwick LLP., certifies that on January 15, 2013, she caused a copy of *London Market Insurers' Answer, Affirmative Defenses and Counterclaim to the Archdiocese's Complaint for Declaratory Relief* to be served via e-mail on the parties listed below.

Bruce G. Arnold barnold@whdlaw.com
Daryl L. Diesing ddiesing@whdlaw.com
Francis H. LoCoco flococo@whdlaw.com
Lindsey M. Johnson ljohnson@whdlaw.com
Jeffrey Anderson jeff@andersonadvocates.com
Michael Finnegan mike@andersonadvocates.com
Mark Nelson mnelson@ncctslaw.com
Philip J. Tallmadge ptallmadge@ncctslaw.com


Dated this 15th day of January, 2013

/s/ Catalina J. Sugayan
Catalina J.  Sugayan
State Bar No. 6191764

Catalina J. Sugayan
Marcos G. Cancio
Sedgwick LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530
Email: catalina.sugayan@sedgwicklaw.com
Email: marcos.cancio@sedgwicklaw.com